UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MYCHEAL CALLOWAY (#96740)** | **CIVIL ACTION** |
| **VERSUS** | |
| **BURL CAIN, ET AL.** | **NO. 08-0682-FJP-DLD** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 11, 2011.

**MAGISTRATE JUDGE DOCIA L. DALBY**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MYCHEAL CALLOWAY (#96740)**　　　　　　　　　　　　　**CIVIL ACTION**

**VERSUS**

**BURL CAIN, ET AL.**　　　　　　　　　　　　　　　　　　　**NO. 08-0682-FJP-DLD**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the parties' cross-motions for summary judgment, rec.doc.nos. 72 and 73.

The pro se plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Warden N. Burl Cain, Secretary James M. LeBlanc, Ass't. Warden Cathy Fontenot and Major Joseph Hooker, complaining that the defendants violated his constitutional rights, commencing on March 23, 2008, by placing him in administrative segregation for sixty-nine (69) days, during which time he was allegedly not allowed an opportunity for out-of-cell exercise. Pursuant to earlier Report and Recommendation in this case, approved by the District Judge on January 12, 2010, see rec.doc.nos. 32 and 62, the plaintiff's claims asserted against defendant Cathy Fontenot have been dismissed, as have the plaintiff's claims arising under state law and all of his claims asserted against the remaining defendants except his claim, asserted against the defendants in their individual capacities, that they violated his rights under the Eighth Amendment to the United States Constitution by denying him out-of-cell exercise.

The plaintiff moves for summary judgment, relying upon the pleadings, Department Regulation No. B-05-001 (dated August 15, 2008, relative to implementing the inmate rulebook as a state regulation), LSP Directive No. 10.001 (dated September 6, 2007, relative to lockdown procedures for "special management inmates"), responses by the defendants to discovery, an

excerpt from the Rules and Procedures for Adult Inmates (relative to credit for time spent in administrative segregation), excerpts from the plaintiff's medical records, and his own affidavit.

The defendants move for summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, and the affidavits of Dr. Jonathan Roundtree and defendant Joseph Hooker.

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Supporting affidavits must set forth facts which would be admissible in evidence, and opposing responses must set forth specific facts showing that there is a genuine issue for trial. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. Anderson, supra.

In his Complaint, as amended, the plaintiff alleges that on March 23, 2008, he was charged with a rule violation and placed in administrative segregation. He was thereafter found guilty of the charged violation and was sentenced to extended lockdown at Camp J at LSP. However, inasmuch as there was apparently no space available in extended lockdown, the plaintiff was maintained in administrative segregation for a period of sixty-nine days pending the availability of such space. During this period, he was allegedly denied any opportunity for out-of-cell exercise. When he inquired of defendant Hooker whether he would be allowed to exercise outside of his cell, defendant Hooker allegedly responded that inmates confined in administrative segregation were not allowed this privilege. The plaintiff complains that, as a result of his confinement in administrative segregation without an opportunity for exercise, he suffered mental health problems and now suffers with severe arthritis in his right arm and in both knees.

In response to the plaintiff's allegations, the defendants assert that they are entitled to qualified immunity in connection with the plaintiff's claims against them. Specifically, they contend

that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. Hale v. Townley, 45 F.3d 914 (5th Cir. 1995). As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. Second, the district court looks to whether the rights allegedly violated were clearly established. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. Id.[1]

Undertaking the Saucier analysis, the Court concludes, as discussed below, that the plaintiff's motion should be denied and that the defendants' motion should be granted.

Under the Eighth Amendment, the law is clear that an inmate has the constitutional right to be free from exposure to cruel and unusual conditions of confinement. While the Eighth Amendment "does not mandate comfortable prisons", Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), the Constitution imposes upon prison officials at least minimal requirements in the treatment and facilities which they provide to prisoners. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Prison officials must ensure that inmates

---

[1] The United States Supreme Court has recently held that rigid chronological adherence to the Saucier two-step methodology is no longer mandatory. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Although the Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

receive adequate food, clothing, shelter and medical care, and a constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." Harris v. Angelina County, Texas, 31 F.3d 331 (5th Cir. 1994), citing Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Second, under a subjective standard, the Court must determine whether the prison officials responsible for the deprivation were "'deliberately indifferent' to inmate health or safety". Farmer v. Brennan, supra. Specifically, in order to find liability, the Court must find that prison officials were both aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and that they also in fact drew the inference. Id. The deliberate indifference standard is appropriately applied to the plaintiff's allegations regarding the conditions of his confinement. Woods v. Edwards, 51 F.3d 577 (5th Cir. 1995); Wilson v. Seiter, supra. Further, in appropriate circumstances, deliberate indifference may be inferred from the obviousness of the substantial risk. Farmer v. Brennan, supra.

The courts of this Circuit and others have repeatedly held that a reasonable opportunity for exercise is a basic human need which may not arbitrarily be revoked, see, e.g., Green v. Ferrell, 801 F.2d 765 (5th Cir. 1986); Ruiz v. Estelle, 679 F.2d 1115 (5th Cir. 1982), amended in part and vacated in part, 688 F.2d 266 (5th Cir. 1982), cert. denied, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); Maze v. Hargett, 200 F.3d 814 (5th Cir. 1999). While neither the Fifth Circuit nor the United States Supreme Court has held that inmates enjoy an absolute right to out-of-cell exercise, the Fifth Circuit has repeatedly held that an extended deprivation of exercise opportunities may impinge upon an inmate's Eight Amendment rights depending upon the particular facts of a given case. See, e.g., Hewitt v. Henderson, 271 Fed.Appx. 426 (5th Cir. 2008); Green v. Ferrell, supra; McGruder v. Phelps, 609 F.2d 1023 (5th Cir. 1979). In addition, there are numerous reported decisions which indicate that limitations placed upon an inmate's opportunity for exercise must take

into account the size of his cell, the amount of time that he spends locked in his cell each day, and the overall duration of his confinement. See, e.g., Green v. Ferrell, supra.

The defendants, moreover, are deemed to be aware of the established jurisprudence that some opportunity for exercise is mandated for inmates serving long sentences of confinement. See, e.g., Ruiz v. Estelle, supra ("[i]nmates require regular exercise to maintain reasonably good physical and psychological health."). In Green v. Ferrell, supra, for example, although the Fifth Circuit Court upheld a prison restriction which did not allow outdoor exercise to inmate plaintiffs, the Court focused in that case upon the fact that the plaintiffs were serving sentences averaging less than three months and were allowed 5 hours per day outside of their cells in a large indoor common room. In contrast, in Maze v. Hargett, supra, a judgment awarding nominal damages was upheld in a case involving an inmate plaintiff inmate who was in fact allowed sporadic outdoor exercise and one hour per day of indoor exercise in a small crowded dayroom. The district court had found in that case, after an evidentiary hearing, that the plaintiff's opportunity for exercise, both indoors and out, was decidedly insufficient. The court had further denied the defendants' claims that their actions were reasonable in light of their respective knowledge (qualified immunity) and that they did not have the requisite culpable state of mine to amount to deliberate indifference. See also Hewitt v. Henderson, supra (reversing grant of dismissal in favor of defendant and remanding for additional factual development); Ruiz v. Estelle, supra (upholding award of injunctive relief mandating at least one hour per day of out-of-cell exercise for inmates housed in administrative segregation for more than three days.).

Applying the foregoing standard, the Court concludes initially that defendant James LeBlanc is entitled to summary judgment in connection with the plaintiff's allegations. In this regard, in order for a supervisory official to be found liable under § 1983, he must have been personally involved in conduct causing the alleged deprivation of a plaintiff's constitutional rights, or there must be a causal connection between the actions of the defendant and the constitutional violation sought to be redressed. Lozano v. Smith, 718 F.2d 756 (5th Cir. 1983). Further, in the absence of direct

personal participation by a supervisory official in an alleged constitutional violation, the plaintiff must allege that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies, or as a result of a breach by the supervisor of an affirmative duty specially imposed upon him by state law. Lozano v. Smith, supra. Any allegation that defendant LeBlanc is responsible for the actions of his subordinates is insufficient to state a claim under § 1983. Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

In the instant case, the plaintiff has failed to allege either personal participation by defendant LeBlanc in the deprivations alleged or the existence of an affirmative wrongful policy implemented by this defendant. To the contrary, although the Court noted in a prior Report and Recommendation that the record was unclear as to whether there was a written or recognized policy which precluded out-of-cell exercise to inmates housed in administrative segregation – a policy which could perhaps be attributed to the Secretary of the Department of Corrections – the Court now has before it, on motion for summary judgment, a copy of LSP Directive 10.001, which specifically provides, in Section C(4), that inmates housed in administrative segregation at LSP are to be provided with "a minimum of one hour of exercise per day outside their cells, five days per week, unless security or safety considerations dictate otherwise." The Directive further provides that, if it is unsafe for an inmate housed in administrative segregation to exercise outside his cell, "the Correctional Officer must document the exact reason (i.e., enemy, security risk) as to why the inmate was not allowed to exercise," and must document such reason "on the Yard, Shower and Tier Roster." Accordingly, it appears that there was in fact a written policy in place at LSP which, had it been followed, would normally have resulted in the plaintiff being allowed to exercise outside of his cell while confined in administrative segregation. As a result, because there was such a policy in place at the prison, the Court concludes that James LeBlanc, as Secretary of the Department of Corrections, may not be found liable for a failure by officials at the prison to follow the referenced LSP Directive. Accordingly, defendant LeBlanc is entitled to summary judgment,

dismissing him from this proceeding.

Turning to the plaintiff's claim asserted against defendant Burl Cain, the Court similarly finds that the plaintiff has failed to show sufficient personal participation by defendant Cain in the violations alleged. Although the plaintiff alleges in his Complaint that defendant Cain "is the warden over LSP and is responsible for the opperation [sic] of the prison", this is a mere attempt to impose vicarious liability upon the defendant for actions taken by subordinate officers, which vicarious liability is not permitted under § 1983. Further, although the plaintiff alleges that defendant Cain failed to supervise and train Officer Joseph Hooker, who was allegedly in charge of the plaintiff's cell block, this is a conclusory assertion which is insufficient to support liability under § 1983. See Yates v. Unidentified Parties, 73 Fed.Appx. 19 (5th Cir. 2003) (holding that the plaintiff's "vague and conclusional allegation" that the defendant Sheriff failed to train or supervise his deputies was not sufficient to support liability). In order to prevail on a claim of failure to train or supervise, the plaintiff must show that (1) defendant Cain in fact failed to train or supervise his employees, (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounted to deliberate indifference. Estate of Davis v. City of North Richland Hills, 406 F.3d 375 (5th Cir. 2005). Specifically, the plaintiff must show that, "in light of the duties assigned to specific officers or employees, the need for more or different training [was] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy makers ... can reasonably be said to have been deliberately indifferent to the need." City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Applying the foregoing standard, the plaintiff has not created a genuine issue of material fact relative to the question of Warden Cain's "deliberate indifference". The plaintiff provides no more than a conclusory assertion that defendant Cain failed to supervise or train his subordinate officers, and he has provided no evidence suggesting that the need for additional training and/or supervision was obvious or that defendant Cain, in his capacity as warden of a facility housing more than 5,000 inmates, was personally aware of the deprivations which the plaintiff was allegedly suffering in

March, April and May of 2008. In order for an official to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, supra. Based on the foregoing, the plaintiff has failed to establish any conduct on the part of defendant Cain which amounts to deliberate indifference.

Finally, turning to the plaintiff's claim asserted against defendant Joseph Hooker, the Court finds that although the issue is a closer one, this defendant is entitled to summary judgment as well. The plaintiff, an inmate serving an apparently lengthy sentence of confinement, was allegedly held in administrative segregation for a period of 69 days with no opportunity for out-of-cell exercise, as a result of which he asserts that he suffered with mental problems and that he currently suffers with severe arthritis in his right arm and both knees. When he inquired of defendant Hooker regarding access to exercise, the defendant allegedly responded that the plaintiff was not entitled to out-of-cell exercise while confined in administrative segregation. Defendant Hooker has not presented the Court with an affidavit or other evidence refuting this assertion, and in any event, the failure to provide any opportunity for exercise appears to be in direct contravention of LSP Directive 10.001, which dictates that inmates held in administrative segregation should ordinarily be allowed at least one hour per day of out-of-cell exercise, five days per week. To the extent that prison officials may have believed that the plaintiff presented a security risk and so should have been disallowed such exercise, this determination, in accordance with the Directive, should have been noted in the yard, shower and tier roster, yet the defendants have not presented the Court with any documentation suggesting that such a determination was made or noted. In his response to the plaintiff's interrogatories, defendant Hooker asserts that, "[a]t the time of this incident, the main prison cell blocks were not set up with yard pens to provide an inmate in administrative segregation ... with outside yard recreation." This assertion, however, misses the point. The Court is not concerned in this case with a disallowance of "outside yard" exercise but rather with a disallowance of any reasonable opportunity for the inmate plaintiff, at a minimum, to leave his 5' x 9' cell and walk up

and down the hallway of his tier. Having apparently ignored the dictates of the LSP Directive and having failed to permit this minimal amount of exercise to the plaintiff for a period of more than two months, the defendant's actions appear to border on deliberate indifference to the plaintiff's health and well-being.

Notwithstanding the foregoing, the Court is unable to find that the plaintiff will be able to make a showing of deliberate indifference in this case. In <u>Hernandez v. Velasquez</u>, 522 F.3d 556 (5th Cir. 2008), the Fifth Circuit upheld the grant of summary judgment to defendants who maintained an inmate in segregated confinement for 13 months without affording him an opportunity for exercise outside of his cell. In that case, the plaintiff had originally been placed in such confinement, not as a punitive measure, but for his own safety and security in light of recent gang activity. In upholding the grant of summary judgment, the Court stated:

> Assuming Hernandez can show a sufficiently serious deprivation, he also must show that prison officials acted with "deliberate indifference" to his health or safety. This follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. <u>Id.</u> [citing <u>Farmer v. Brennan</u>, <u>supra</u>]; <u>see also id.</u> at 837, 114 S.Ct. 1970 ("The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments'.").... We conclude that Hernandez cannot show deliberate indifference as required by <u>Farmer</u> because there is no record evidence he was ever placed at "substantial risk of serious harm." At summary judgment there was evidence on both sides as to the nature of Hernandez's discomfort. Defendants presented expert testimony that Hernandez's records revealed no complaint of muscle disorder.... Assuming the evidence creates a fact issue as to whether Hernandez suffered from muscle atrophy, stiffness, loss of range of motion, and depression, there is nonetheless no indication these conditions posed a substantial risk of serious harm. The district court properly concluded there was no genuine issue as to whether Hernandez suffered a "serious illness or injury" sufficient to constitute an Eighth Amendment violation.

Similarly, the Fifth Circuit in <u>Haralson v. Campuzano</u>, 356 Fed.Appx. 692 (5th Cir. 2009), upheld a grant of summary judgment in favor of prison officials who had confined an inmate, again for non-punitive reasons, in a cell in the prison infirmary for a period of 7 months without any opportunity for out-of-cell exercise, notwithstanding that the inmate <u>admittedly</u> suffered muscle atrophy and depression as a result of such confinement. In the instant case, similarly, the plaintiff was initially placed in administrative segregation at LSP, not as a punitive measure but while an investigation was conducted to determine whether he had violated prison rules. He was thereafter maintained

in administrative segregation, again not as part of his punishment but as an interim housing assignment while awaiting available space at his newly assigned housing classification in extended lockdown. A review of his medical records during the relevant time period reflects that he did not complain of any symptoms resulting from such confinement. Instead, on May 1, 2008, he sought medical attention complaining only of a rash, and on May 20, 2008, at a follow-up appointment for this complaint, he signed a form refusing treatment, writing on the form that "nothing is wrong with me at this time." It was not until July 1, 2008, 2½ months after his release from administrative segregation, that he first complained of pain and stiffness in his right elbow. The notes from a subsequent doctor's appointment on July 23, 2008, reflect that, when asked about the origin of this complaint, the plaintiff responded that "several years ago while working in the kitchen, [his] right elbow was smashed into [a] wall." Although the plaintiff complains that his current arthritis symptoms are the result of his period of confinement without exercise, the affidavit of Dr. Jonathan Roundtree attests that, as early as 2004, long prior to the events complained of herein, the plaintiff was diagnosed with mild arthritic changes, and that the plaintiff's two-month confinement in administrative segregation in 2008 "would not have caused him arthritis". Based on this evidence, the Court is compelled to conclude, as in Hernandez, that even if there is a fact issue as to whether the plaintiff suffered some aggravation of his pre-existing arthritic condition, there is no indication whatever that the conditions in administrative segregation posed a substantial risk of serious harm which any defendant was aware of and yet ignored. See Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Accordingly, as in Hernandez, there is no genuine issue of fact in this case whether the plaintiff suffered a "serious illness or injury" sufficient to constitute an Eighth Amendment violation. The defendants' motion for summary judgment, therefore, should be granted with respect to this issue, and the plaintiff's action should be dismissed.

## RECOMMENDATION

It is recommended that the plaintiff's motion for summary judgment, rec.doc.no. 73, be denied, that the defendants' motion for summary judgment, rec.doc.no. 72, be granted, dismissing

the plaintiff's claims asserted against the defendants, and that this action be dismissed, with prejudice.

Signed in Baton Rouge, Louisiana, on February 11, 2011.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**